IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:09CR360-1 |
| ) | |
| JAMES LOUIS THOMAS ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

Before the court is the motion of Defendant James Louis Thomas ("Thomas") to suppress evidence seized from trash receptacles placed for pick-up at the curb of his property as well as evidence seized from his residence pursuant to a search warrant. (Doc. 9.) The Government has responded to the motion (Docs. 12, 13), and an evidentiary hearing was held on December 17, 2009. For the reasons set forth below, the motion is DENIED.

**I. BACKGROUND**

The Government presented the testimony of Detective R. Laird of the Forsyth County (North Carolina) Sheriff's Office, a ten-year law enforcement veteran. Detective Laird has handled approximately 200 narcotics investigations, of which over 150 have involved marijuana. The court finds Detective Laird's testimony credible and finds the following facts.

On April 3, 2009, Detective Laird received an anonymous phone call at his office, advising that a black male named "Bird" was in the business of selling marijuana. The caller identified "Bird" as approximately 6 feet tall and weighing 250-275 pounds. The caller also described "Bird" as driving a dark-colored SUV bearing North Carolina registration XTY1182. Detective Laird determined from North Carolina Department of Motor Vehicles records that the license tag was registered to Defendant Thomas, who lived at 1259 Churton Street in Winston-Salem, North Carolina. Detective Laird surveilled that address that day and observed Thomas leaving the Churton Street residence in the vehicle registered to him and identified by the anonymous caller. Detective Laird surveilled the residence on April 10, 2009, and observed the vehicle there again.

Having determined that trash pick-up by the City of Winston-Salem Division of Sanitation occurred on Wednesdays, Detective Laird conducted further surveillance at the residence on Wednesday, April 22, 2009, arriving at 3:30 a.m. At 5:45 a.m., he observed Thomas place his trash receptacle -- a large, four-foot tall Sanitation Division container with lid and wheels -- at the end of his driveway for pick-up on the curb of Churton Street. Not long thereafter, Detective Laird, standing in Churton Street, reached into the receptacle and seized three black and one white large trash bags. From the trash bags he

2

removed several empty cigar boxes, a large amount of cigar filler and wrapper tobacco, and a partially smoked marijuana cigar. The marijuana field tested positive for THC, the active ingredient in marijuana. Detective Laird also recovered a letter addressed to Thomas at the Churton Street address. (See Gov't Ex. 8-14.) Based on his experience and training, Detective Laird was familiar with marijuana users splicing open such cigars and replacing the tobacco with marijuana to be smoked.

On Wednesday, May 6, 2009, Detective Laird conducted further surveillance at 1259 Churton Street and at 7:40 a.m. observed the trash receptacle at the end of the driveway at the street. Standing in the street and reaching into the trash receptacle, Detective Laird removed two partially opened black trash bags, one of which contained a white trash bag. Inside these bags was mail addressed to Thomas as well as empty cigar boxes, a large amount of cigar filler and cigar wrapper tobacco, and 3 grams of marijuana mixed in with the filler tobacco that tested positive for THC. (See Gov't Ex. 15, 16.)

On Wednesday, May 13, 2009, Detective Laird again surveilled the Defendant's residence at 1259 Churton Street and at about 6:45 a.m. observed Thomas walk the trash receptacle to the end of his driveway. Shortly thereafter, Detective Laird, again standing in the roadway, reached into the receptacle and

3

Case 1:09-cr-00360-TDS   Document 14   Filed 12/28/09   Page 3 of 16

removed additional trash bags which contained empty cigar boxes, a large amount of filler and cigar wrapper tobacco, 2.5 grams of marijuana mixed in with filler tobacco, and a zip-lock plastic bag with 3 grams of marijuana. Also in the trash were documents addressed to Thomas at the Churton Street address. Additionally, Detective Laird noted marijuana residue and a strong marijuana odor on another bag as well as small plastic sandwich bags with torn plastic corners, which Detective Laird, based on his experience and training, recognized to be the packaging method used by distributors of marijuana. (See Gov't Ex. 17-24.)

That same day, Detective Laird applied for a warrant to search Thomas's residence, among other places. In relevant part, the search warrant provided as follows:

> On 04/03/09 The Applicant conducted surveillance and found James Thomas leaving the front door or 1259 Churton St. Winston-Salem, NC 27103 and leaving the residence in a dark grey 2005 Chevrolet Suburban (XYT1182/NC).
>
> On 04/20/09 Det. Denton and The Applicant found a trash can off the curtilage in front of 1259 Churton St. Winston-Salem, NC 27103. The Applicant seized some of the trash bags inside for inspection. The Applicant located several empty Philly Blunt cigar boxes, a large amount of cigar filler tobacco, and cigar wrapper tobacco. The Applicant also located a partially smoked marijuana cigar, commonly referred to as a "blunt," which contained an amount of Marijuana.
>
> The marijuana was seized and later field tested positive for THC, the active ingredient in

4

Schedule VI NC Controlled Substance. The marijuana was entered into FCSO [Forsyth County Sheriff Office] Property Control.

On 05/06/09 Det. Denton and The Applicant found a trash can off the curtilage in front of 1259 Churton St. Winston-Salem, NC 27103. The Applicant seized some of the trash bags inside for inspection. The Applicant located several empty Philly Blunt cigar boxes, a large amount of cigar filler tobacco, and cigar wrapper tobacco. The Applicant found approximately 3 grams marijuana mixed in with the filler tobacco.

The marijuana was seized and later field tested positive for THC, the active ingredient in Schedule VI NC Controlled Substance. The marijuana was entered into FCSO Property Control.

On 05/12/09 while conducting surveillance, Det. Denton and The Applicant saw James Louis Thomas B/M DOB 07/29/ move a trash can off the curtilage in front of 1259 Churton St. The Applicant seized 2 trash bags inside for inspection. The Applicant located several empty Phillip Blunt cigar boxes, a large amount of filler tobacco, and cigar wrapper tobacco. The Applicant found approximately 2.5 grams Marijuana mixed in with the filler tobacco, a large plastic zip lock plastic bag with approximately 3 grams Marijuana inside, and documents addressed to James Louis Thomas – 1259 Churton St. Winston-Salem, NC 27103. The applicant also found a large, black, heavy duty, plastic bag that contained Marijuana residue and a strong smell of fresh marijuana. The bag was not of the same texture or design as the black plastic bags used for the trash. The Applicant also found small plastic sandwich bags and torn plastic bag corners.

The marijuana, documents, and plastic bags were seized and entered into FCSO Property Control. The marijuana field tested positive for THC, the active ingredient in Schedule VI NC Controlled Substance.

5

The Applicant has viewed the OSSI listing for James Louis Thomas B/M DOB 07/29/76, which contains a photo. The Applicant viewed the photo and identified James Louis Thomas as the same individual viewed during surveillance on 05/13/09 and 04/03/09 by The Applicant.

Based upon training and experience in other investigations, this Applicant has found it to be common by persons dealing in controlled substances to use small plastic sandwich bags to package controlled substance for sale. This Applicant has also found it to be common with persons dealing in large amounts of controlled substances to package the substance in heavy plastic bags for transport.

Based upon training and experience in other investigations, this Applicant has found it to be common by persons dealing in controlled substances to only carry or transport with them the amount of controlled substance that they are expecting to distribute at that given time. They commonly store the bulk of their controlled substances at their residence and/or business which these persons use as a "stash house" or cache to store the controlled substances until they are needed for distribution. The applicant has also found it to be common for these persons to conceal controlled substances and money, representing sales profits, in their vehicles until they desire to distribute the controlled substances or spend the money.

This Applicant contends, that when all the information provided taken in it's entirety, provides probable cause to believe that the residence located at 1259 Churton St. Winston-Salem, NC 27103, is used as a secure base of operation from which to manufacture, store, sell, and deliver Methamphetamine and Cocaine. The Applicant further contends that there is probable cause to believe a search of the residence located at 1259 Churton St. Winston-Salem, NC 27103 will result in the discovery of additional controlled substances, evidence of occupancy, FCSO Special Funds.

(Gov't Ex. 25.)  The magistrate issued the warrant, and a search of Thomas's residence that day discovered additional narcotics as well as a hand gun.  (Gov't Ex. 25.)

During the suppression hearing, Detective Laird acknowledged that the search warrant affidavit he presented to the magistrate improperly referred to Thomas's license number as "KTY1182" on page 1 and "XYT1182" on page 2, when in fact the correct number was "XTY1182."  Further, Detective Laird conceded that while his internal report contained the correct dates, two of the dates in the affidavit were erroneous: (1) "04/20/09," which was a Monday, should have been April 22, 2009, a Wednesday; and (2) "05/12/09," which was a Tuesday, should have been May 13, 2009, a Wednesday.  Finally, Detective Laird conceded that the penultimate paragraph in the affidavit improperly refers to Detective Laird's belief there was probable cause that Thomas's residence "is used as a secure base of operation from which to manufacture, store, sell and deliver Methamphetamine and Cocaine" when it should have stated "Marijuana."  (Gov't Ex. 25 at 4.)

Thomas's motion to suppress challenges the constitutionality of the search of the trash receptacles, and at the evidentiary hearing he raised an additional challenge to the validity of the application for the search warrant.

**II. ANALYSIS**

    **A.    Search of Thomas's Trash Receptacle**

In <u>California v. Greenwood</u>, 486 U.S. 35, 40 (1988), the Supreme Court held that a defendant has no reasonable expectation of privacy in refuse left on or at the side of a public street that is readily accessible to animals, children, scavengers, snoops, and other members of the public. In <u>Greenwood</u>, the Court noted that the defendants

> placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it" . . . respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

486 U.S. at 40 (citations omitted). The Court cited with favor <u>United States v. Thornton</u>, 746 F.2d 39, 49 and n.11 (D.C. Cir. 1984), which stated that "the overwhelming weight of authority rejects the proposition that a reasonable expectation of privacy exists with respect to trash discarded outside the home and the curtilege [sic] thereof." 486 U.S. at 42-43 (citing cases).

In the present case, Thomas conceded at the hearing that Detective Laird's testimony supported the conclusion that the search of the trash receptacles was conducted off the curtilage.

8

The court holds that the search of the trash was constitutional. On dates of scheduled trash pick-up by city workers, Thomas placed his trash receptacle at the edge of his property to be accessible by sanitation workers from the street. This is a location particularly suited for public inspection and consumption and for the express purpose of having strangers (namely the trash collectors) take it. Even if one assumes that Thomas's use of black plastic bags is some evidence of a subjective expectation of privacy (though Thomas did not testify), the court finds that it could not be objectively reasonable. While one man's trash may be another's treasure, it may also be legitimate evidence for law enforcement. Accordingly, Thomas's motion to suppress as to the search of the trash receptacle is DENIED.

**B. Search Warrant**

When officers conduct a search and seizure pursuant to a warrant, the defendant has the burden of proving by a preponderance of the evidence that suppression is warranted. United States v. Matlock, 415 U.S. 164, 177 n. 14 (1974). The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. amend. IV. Courts apply a "totality of the circumstances" analysis to determine if probable cause exists to support a search warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983). In reviewing the magistrate's

probable cause determination, "great deference" must be accorded to the magistrate's assessment of the facts presented to him or her. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (citing Spinelli v. United States, 393 U.S. 410 (1969)). A reviewing court need only determine "whether there is substantial evidence in the record" to support the magistrate's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984) (per curiam). In reviewing a probable cause determination, a court may consider only "the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

Thomas conceded at oral argument that the items seized from his trash receptacles constituted probable cause to search for marijuana at his residence. What he challenges is the sufficiency of the affidavit supporting the warrant application. First, he argues that the affidavit failed to provide a factual basis for determining whether probable cause existed because it described the trash receptacles from which illegal drugs and related paraphernalia were seized as having been located "off the curtilage in front of 1259 Churton Street[,] Winston-Salem, NC 27103." Thomas argues that the phrase "curtilage" is conclusory and imbued with legal, not factual, meaning. Thus, he concludes, the magistrate was unable to exercise his or her

10

independent judgment in determining whether to grant the application for the warrant.

Thomas's argument is unpersuasive. While having legal meaning, the term "curtilage" also has a common, factual definition. <u>Webster's Third New International Dictionary</u> defines curtilage as "a yard, courtyard, or other place of ground included within a fence surrounding a dwelling house." <u>Webster's Third New Int'l Dictionary</u> at 558 (1986 Ed.) Further, <u>Black's Law Dictionary</u> defines it as "[t]he land or yard adjoining a house, usu. protected by an enclosure." <u>Black's Law Dictionary</u> at 441 (9th Ed. 2009). Thus, the everyday, common meaning is sufficiently co-extensive with any "legal" meaning. Further, to the extent a phrase may be more commonly known to those familiar with and having some training in law, a magistrate is generally such a person.

Thomas next argues that the errors in Detective Laird's affidavit render the application defective. Specifically, Thomas points to the transposed letters referring to his license number, the incorrect dates of April 20, 2009, and May 12, 2009 (which should have been April 22, 2009 and May 13, 2009, respectively), and the concluding paragraph's reference to "Methamphetamine and Cocaine" instead of "Marijuana." The Defendant has cited no authority for his argument, nor has the

11

Government cited any authority for its position that such errors are inconsequential.

It is true that when the Fourth Amendment "demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a *truthful* showing." Franks v. Delaware, 438 U.S. 154, 164-65 (1978) (emphasis in original) (citation and internal quotation marks omitted). To overcome a "presumption of validity" with respect to a warrant affidavit, a defendant must allege and make an offer of proof of deliberate falsehood or reckless disregard for the truth. United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008) (describing the burden of making the necessary showing as "a heavy one to bear"). Thomas makes no claim that the errors in Detective Laird's affidavit were deliberate or made recklessly or in bad faith. In the universe of errors found in a warrant affidavit, the Supreme Court has been unwilling to extend exclusion to instances of "negligence or innocent mistake." Franks, 438 U.S. at 171. To be sure, this is not a case where it is argued that critical facts were *omitted*; rather, Thomas points to what appear to amount to typographical errors and a failure to proofread.

The court finds that such errors, while perhaps sloppy, did not undermine the determination of probable cause and do not render the warrant deficient. United States v. Gary, 528 F.3d

324, 328-29 (4th Cir. 2008), cert. denied, 129 S. Ct. 961 (2009). On its face, the application provides a substantial basis for the magistrate's finding. Accordingly, Thomas's motion to suppress the fruits of the search conducted pursuant to the warrant is DENIED.

Even if the errors to which Thomas points would render the warrant deficient, the warrant should be upheld under the good faith exception of United States v. Leon, 468 U.S. 897 (1984). A court should not suppress evidence procured pursuant to a search warrant, even if the search warrant is subsequently invalidated, unless "a reasonably well trained officer would have known that the search is illegal despite the magistrate's authorization." United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (internal citations omitted). "Usually, searches conducted 'pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search.'" Id.

Nevertheless, there are four circumstances in which an officer has "no reasonable grounds for believing that the warrant was properly issued." Leon, 468 U.S. at 922-23. Suppression remains appropriate if: (1) the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless

13

disregard of the truth"; (2) the magistrate "wholly abandoned his judicial role"; (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Id. at 923.

None of these circumstances exists here. For the reasons just noted, the typographical mistakes as to the dates and license number were inadvertent and "at best could be chalked up to negligence on the fault of the officer who prepared the affidavit." Gary, 528 F.3d at 329.

Further, in the overall context of the application, it was abundantly clear that the mistaken reference to "Methamphetamine and Cocaine" was a simple error. The affidavit provided at its very beginning:

> There is probable cause to believe that:
>
> *Marijuana, a Schedule VI of the North Carolina Controlled Substance Act,* United States currency, stolen property, drug paraphernalia, bills, receipts, papers, records – written, photographic, electronic or magnetic, that tend to show the obtaining, possessing, or expenditure of assets; computers, computer disk, relating to the purchase and distribution of controlled substances; address and/or telephone books reflecting named persons or other conspirators; pagers, firearms, cellular phones, safes, lock boxes, ledgers, keys to the residence/business and/or vehicles, photographs which depict conspirators and/or controlled substances; indicators of ownership, occupancy, or possession

14

>     including but not limited to telephone and
>     utility bills/receipts, and all telephone calls
>     [searching officers are directed to answer the
>     telephone and converse with callers without
>     revealing their true identity] constitutes
>     evidence of a crime and the identity of a person
>     participating in a crime, Violation of the North
>     Carolina Controlled Substance Act Chapter 90,
>     Violation of the North Carolina General Statutes
>     Chapter 14 and is located . . .

(Gov't Ex. 25) (emphasis added.) Further, the affidavit describes throughout its factual recitation covering several paragraphs the multiple searches and seizures of *marijuana* from Thomas's trash receptacles.

Nor does the evidence demonstrate that the magistrate failed to perform a neutral and detached function. Notwithstanding the errors cited, there is no testimony that the magistrate failed to read the complete affidavit and consider the substantial evidence of probable cause contained in it. Had the magistrate noticed the errors noted by Thomas, there was still a substantial factual basis for believing the probable cause conclusion was adequate.

Finally, the warrant is not so facially deficient that Detective Laird and other officers of the Forsyth County Sheriff's Office could not reasonably presume it to be valid. Even Thomas concedes that the evidence seized from the trash receptacles provides probable cause for a search of the residence. Here, an officer could reasonably have relied on the

15

magistrate's issuance of the warrant. United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995).

In sum, none of the purposes of the exclusionary rule would be served by suppressing the evidence here. "The exclusionary rule seeks to deter unlawful police conduct." Gary, 528 F.3d at 329. The Forsyth County Sheriff's Office investigated an anonymous tip to establish probable cause to search the Defendant's home. Once they found evidence of illegal drug activity from the trash receptacles in a constitutional fashion, they followed proper procedures to obtain a warrant. The errors here are inadvertent, and the officers are entitled to Leon's good faith exception. Gary, 528 F.3d at 330 (noting that "[o]fficers already have significant incentives to avoid the sort of mistake that occurred here" and "[t]here is simply no need to create additional incentives for police officers to avoid making typographical errors that are to their own detriment").

## III. CONCLUSION

The court has carefully considered all of the Defendant's arguments. For the reasons set forth above, the motion to suppress (Doc. 9) is DENIED.

                                                  /s/ Thomas D. Schroeder
                                            United States District Judge

December 28, 2009